IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LULA F. MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 3:11cv771-WC |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, Lula F. Marshall, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff not disabled from July 21, 2009 through the date of the decision. Tr. 31. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-seven years old at the time of the hearing before the ALJ. Tr. 134; 207.  Plaintiff completed high school and two years of college.  Tr. 253.  Plaintiff's past relevant work experience was as:  "military police"; "cashier"; "security guard"; and "salad bar attendant." Tr. 72-73. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had "not engaged in substantial gainful activity since July 21, 2009, the alleged onset date." (Step 1) Tr. 18.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments:  "degenerative disc disease of lumbar spine; osteoarthritis of right knee; obesity; right wrist tendonitis; and post traumatic stress disorder." *Id.*  The ALJ then found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Step 3) *Id.*  Next, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work with a sit/stand option.  She should have casual contact with the public and co-workers. Supervision should be non-confrontational and supportive.

Tr. 19.  At Step 4, and after consulting with a VE, the ALJ found that Plaintiff "is capable of performing past relevant work as a security guard and cashier.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."  Tr. 30.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from July 21, 2009 through the date of th[e] decision."  Tr. 31.

**IV.   PLAINTIFF'S CLAIMS**

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision:  1) whether "the [ALJ] err[ed] at Step 4 of the sequential evaluation when she found [Plaintiff] could only have 'casual contact' with others and the Dictionary of Occupational Titiles indicates both security guard and cash[i]er require significant people contact"; and 2) whether "the ALJ err[ed] in her [RFC] finding."  Pl.'s Br. (Doc. 14) at 1.  The court will address each of Plaintiff's arguments below.

**V.   DISCUSSION**

> **A.   *Whether the ALJ erred at Step 4 in determining that Plaintiff can return to her past relevant work.***

Plaintiff argues that the ALJ erred at Step 4 because "she found [Plaintiff] could only have 'casual contact' with others and the Dictionary of Occupational Titles indicates both security guard and cash[i]er require significant people contact."  Pl.'s Br. (Doc. 14) at 1.  Thus, Plaintiff argues, the VE's testimony "is not reliable because it is inconsistent with the DOT," and "contrary to [SSR] 00-4, the [ALJ] failed to reconcile the discrepancy."  Pl.'s Br. (Doc. 14) at 12.

Defendant contends that "[w]hile [the DOT], . . . describes both jobs as requiring significant speaking-signaling . . . this is not inconsistent with the <u>casual</u> nature of the contacts the ALJ contemplated"; that "[e]ven were the Court to decide that Plaintiff's residual functional capacity did not allow her to perform her past work as a security guard due to the potential in some such jobs for confrontational situations with the public or co-

workers, she clearly could still perform the sort of public contact required of a cashier"; and that "the ALJ's hypothetical question to the vocational expert captured the essentials of the ALJ's assessment of Plaintiff's residual functional capacity. Thus, the vocational expert's testimony constituted substantial evidence in support of the ALJ's finding." Def.'s Br. (Doc. 16) at 15.

The court finds that Plaintiff's argument is due to fail. Even assuming that the VE's testimony is inconsistent with the DOT *and* that the ALJ failed to resolve this discrepancy, this would not be a reversible error by the ALJ. While it is true that SSR 00-4p requires an ALJ to "elicit a reasonable explanation" for any "apparent unresolved conflict" between the testimony of the VE and the DOT,[5] the United States Court of Appeals for the Eleventh Circuit has held that this agency ruling is not binding on the court. *See Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007). Relying on precedent, the *Miller* court held that because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE without resolving the conflict. *Miller*, 246 F. App'x at 662 (citing *Jones v. Apfel,* 190 F.3d 1224, 1230-31 (11th Cir. 1999) ("when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT.")).[6] *See also Akins v. Comm'r of Soc. Sec.*,

---

[5] Social Security Ruling 00-4p states that "[w]hen a VE . . . provides evidence about the requirements of a job . . . , the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p.

[6] In *Miller*, the United States Court of Appeals for the Eleventh Circuit, explicitly held that *Jones* remains binding law in the Eleventh Circuit because Social Security Rulings do not bind courts and do not have the force of law. 246 F. App'x at 662.

2009 WL 2913538 *5 (M.D. Fla. Sept. 10, 2009) (holding that the rule in the Eleventh Circuit is the VE still trumps the DOT); *Sollars-D'Annunzio v. Astrue*, 2009 WL 302170, at *10 (M.D. Fla. Feb. 6, 2009) ("[U]nder *Jones* an ALJ may rely upon the testimony of a VE without first resolving any conflict with the DOT."); *Ortiz v. Comm'r of Soc. Sec.*, 2012 WL 603223, at *8 (M.D. Fla. Feb. 24, 2012) (finding no error at Step 4 when ALJ "fail[ed] to ask the VE whether there was any conflict in testimony regarding the requirements of Claimant's past-relevant work and the DOT." The court found that "not only did the Claimant fail to raise any issue of conflict at the hearing or suggest [] that a conflict actually exists, a review of the hearing transcript clearly reveals that the VE testified as to Claimant's past-relevant work as classified by the DOT" and "[t]hus, no actual conflict between the DOT and the VE's testimony [was] apparent."). Accordingly, given this precedent, the court finds that Plaintiff's argument lacks merit.

### B.    *Whether the ALJ properly determined Plaintiff's RFC.*

Plaintiff presents two arguments in raising a challenge to the ALJ's RFC determination. First, Plaintiff argues that the ALJ's RFC determination is erroneous because "the [ALJ] expressly relied on the State agency's mental [RFC] but the State agency found [Plaintiff] was more limited and these limitations would prevent [Plaintiff] from performing work as a cashier or security guard." Pl.'s Br. (Doc. 14) at 1. Second, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because "[t]he treating psychiatrist's opinion that [Plaintiff] was not able to perform competitive work deserved greater weight." *Id.*

8

>     1.    **Whether the ALJ properly considered the opinions of state agency specialists.**

Plaintiff's first argument contends that the ALJ committed error because "[w]hile the [ALJ] said she relied on Dr. Ravello's mental restrictions of February 20, 2010," the ALJ "overlooked" the limitations listed by Dr. Ravello. Pl.'s Br. (Doc. 14) at 13.[7] According to Plaintiff, "[h]ad these specific limitations been appropriately considered, [Plaintiff]'s past relevant work as a cashier and security guard would have been ruled out." *Id*.

A review of the record suggests that Plaintiff misreads the ALJ's opinion. Dr. Ravello, Ph.D., is a state agency reviewing psychologist. Addressing Dr. Ravello's opinion, the ALJ specifically states:

> Also included in the file is the opinion of Dr. Ravello . . . finding the claimant was capable of work activity but she would be limited to casual contact with public and coworkers. ***This opinion has been considered***, in accordance with [SSR] 96-6p and ***given some weight***. While Dr. Ravello did not have the benefit of the most recent medical sources statements, current medical records or the hearing testimony; that report essentially support[s] the conclusions stated herein.

Tr. 30 (emphasis added). There is no indication that the ALJ was using Dr. Ravello's assessment as more than another piece of the puzzle–there is certainly no indication the ALJ considered this piece of evidence as determinative of the entire RFC analysis. In fact, the ALJ clearly points out some of the drawbacks to Dr. Ravello's medical assessment, noting

---

[7] Plaintiff cites to the following limitations listed by Dr. Ravello:
1. Should be able to concentrate and attend to **simple** tasks for 2 hours
2. Work[s] best in **own work station apart from others** to limit distractions
3. Avoid quick decision making, rapid changes and multiple demands
Pl.'s Br. (Doc. 14) at 13; Tr. 602.

that Dr. Ravello did not have access to the most recent medical statements. The court also notes that Dr. Ravello's assessment does not indicate that any of Plaintiff's functions were "markedly limited." Tr. 600-603. Moreover, a review of the ALJ's decision demonstrates that the ALJ specifically incorporated Dr. Ravello's general findings in her mental residual functional capacity assessment that Plaintiff "would be limited to casual contact with public and coworkers." Tr. 30.[8]

To the extent Plaintiff argues the ALJ should have accorded Dr. Ravello's assessment controlling weight, Dr. Ravello was not a treating physician and, thus, her interactions with Plaintiff necessarily render her, at best, an examining physician. The ALJ has no obligation to give controlling or great weight to the opinion of an examining physician. *See, e.g.*, *Russell v. Astrue*, 331 F. App'x 678, 681-82 (11th Cir. 2009) (holding that the ALJ had good cause for affording little weight to an examiner's opinion where he appropriately found the claimant's other medical records failed to support the opinion and that the doctor's own examination contradicted his opinion).

Plaintiff also points to Barry Slatton's opinion that Plaintiff is "unable to perform past work due to her mental restrictions." Pl.'s Br. (Doc. 14) at 14; Tr. 267-70 and 612. The ALJ appropriately considered this opinion, stating "the undersigned gives no weight to this

---

[8] Plaintiff also argues, "[t]he administrative law judge found Ms. Marshall could perform semi-skilled work, 'consistent with an SVP of 3 or 4.' Tr. 74. This is contrary to Dr. Ravello's finding that Ms. Marshall is limited to and should be able to *concentrate and attend to **simple tasks** for two hours,* i.e., 'unskilled' work according to Social Security's Regulations." Pl.'s Br. (Doc. 14) at 13 (emphasis in original). However, the VE testified that Plaintiff's past relevant work as a cashier was "light work" and "unskilled." Tr. 73. Thus, the ALJ's determination that Plaintiff could perform work as a cashier would be consistent with Dr. Ravello's limitations.

opinion since Single Decision Makers are not acceptable medical sources as defined at 20 C.F.R. 404.1513(a)." Tr. 30. Indeed, an RFC assessment completed by a disability specialist is entitled to no weight. *See Bolton v. Astrue*, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) ("An SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (internal citations and quotations omitted); *Casey v. Astrue*, 2008 WL 2509030, at *4 n.3 (S.D. Ala June 19, 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight.").

### 2. Whether the ALJ erred in not assigning the treating physician's opinion greater weight.

Next, Plaintiff argues that "the treating psychiatrist's opinion that [Plaintiff] was not able to perform competitive work deserved greater weight." Pl.'s Br. (Doc. 14) at 1.

The ALJ must accord substantial weight to the opinion of a treating physician unless there is good cause to do otherwise. *Phillips*, 357 F.3d at 1241; *Lewis v. Callahan*, 125 F.3d 1436, 1439-41 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). The Court of Appeals for the Eleventh Circuit has held:

> "[G]ood cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons.

*Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted)).

Here, the ALJ articulated specific reasons for not giving Dr. Gibson's opinion greater weight, stating:

> In this case, the undersigned concludes that Dr. Gibson's mental capacities assessment contained in Exhibit 13F is not entitled to controlling weight or even great weight because it is not supported by the actual VA treating notes and is inconsistent with the substantial evidence of record. . . . Despite her reported symptoms, the claimant's mental status remained intact and she was functioning in an independent manner, even in a manner that was inconsistent with some [of] her reported symptoms indicating to the undersigned that some symptoms were not debilitating as alleged.  In fact, as discussed above, the claimant was the main caretaker of her mother and the household before her mother's passing.  After the passing of her mother, the claimant has remained independent in all areas and spent more than four months actively engaged in the building of her new house.  That level of independence and required mental activity was not fully reported to Dr. Gibson and certainly is inconsistent with any allegation of disabling mental symptoms.

Tr. 30.  The ALJ's opinion clearly indicates that she did not give Dr. Gibson's opinion controlling weight because it was contradicted by other evidence on the record, pointing, in part, to Plaintiff's own testimony of her daily activities and other treatment notes.  The United States Court of Appeals for the Eleventh Circuit has held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the physician's opinion.  *See Phillips*, 357 F.3d at 1241; *see also Mason v. Comm'r of Soc. Sec.*, 2011 WL 2419929, at *2 (11th Cir. Jun.16, 2011) ("a treating physician's opinion is not entitled to considerable weight if it conflicts with the claimant's own testimony regarding her daily activities.").

A review of Dr. Gibson's assessments also reveals that his notes mostly record Plaintiff's own report of symptoms.  Moreover, while Dr. Gibson consistently assigned

Plaintiff GAF scores below 50, Dr. Gibson did not offer any explanation in his report regarding the GAF score.[9] The Court of Appeals for the Eleventh Circuit has noted that, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)).

Accordingly, for the reasons described above, the court finds the ALJ articulated "good cause" for not assigning great weight to Dr. Gibson's opinion, and the ALJ's RFC assessment is supported by substantial evidence. Thus, Plaintiff's argument is due to fail.

## VI.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

---

[9] "The GAF score is necessarily 'a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.'" *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (citing *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415-16 (6th Cir. 2006) (unpublished)). *See also* DSM–IV–TR at 32.  However, a GAF score "does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work.'" *See, e.g.*, *Ward v. Astrue*, 2008 WL 1994978, at *3 (M.D. Fla. 2008) (citation omitted).

Done this 20th day of December, 2012.

                                          /s/ Wallace Capel, Jr.
                                          WALLACE CAPEL, JR.
                                          UNITED STATES MAGISTRATE JUDGE